# Order

**Michigan Supreme Court**
**Lansing, Michigan**

December 7, 2007

127129

PEOPLE OF THE STATE OF MICHIGAN,
      Plaintiff-Appellee,

v

GENNARO JOSEPH PISCOPO,
      Defendant-Appellant.

_____/

Clifford W. Taylor,
Chief Justice

Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman,
Justices

SC: 127129
COA: 245835
Macomb CC: 2002-001210-FH

On order of the Court, leave to appeal having been granted and the briefs and oral arguments of the parties having been considered by the Court, we VACATE our order of May 23, 2007. The application for leave to appeal the June 24, 2004 judgment of the Court of Appeals is DENIED, because we are no longer persuaded that the questions presented should be reviewed by this Court.

MARKMAN, J., dissents and states as follows:

I respectfully dissent. Defendant, a pastor of a church, was accused of second-degree criminal sexual conduct (CSC) after allegedly touching the complainant in a sexual manner during a religious ceremony. Although an estimated 100 people were present at the time of the alleged incident, no one corroborated the complainant's testimony that the touching occurred. Moreover, four eyewitnesses, as well as defendant, testified that the touching never happened. Because no physical evidence supported the complaint, the prosecutor's case boiled down to a credibility contest between the alleged victim on one side and the four eyewitnesses and defendant on the other side.

Defendant sought to admit evidence that the complainant had made prior false allegations of sexual abuse against another pastor and that the complainant also claimed to have been raped by a "demon." Although this evidence would almost certainly have cast light on the complainant's credibility, and despite the obvious relevance of her credibility, the trial court refused to admit this evidence. This decision was based, in significant part, on its conclusion that the rape-shield statute, MCL 750.520j, prevented

the admission of defendant's proffered evidence. Defendant was eventually convicted on the lesser-included charge of fourth-degree CSC after the jury deliberated for 4½ days.

This Court's decision to allow this conviction to stand effects a remarkable deprivation of justice by affirming a trial court decision that has denied defendant his fundamental right to mount an effective defense to the charges against him. If the trial court had admitted defendant's evidence suggesting that the complainant had made prior false allegations of sexual abuse and indicating that the complainant claimed to have been raped by a demon, a reasonable juror might well have considered this evidence relevant in assessing the credibility of the complainant, who was the exclusive source of evidence against defendant.

To ensure that a defendant can adequately defend himself, to safeguard the truth-seeking function of the criminal trial, and to prevent the conviction of an innocent person, criminal defendants are constitutionally guaranteed the right to confront witnesses against them, by subjecting adverse witnesses to "testing in the crucible of cross-examination." *Crawford v Washington*, 541 US 36, 61 (2004). Ordinarily, a defendant may engage in the most rigorous cross-examination to demonstrate a witness's bias or improper motivation to testify, or the witness's general or specific lack of credibility. This right of cross-examination constitutes the linchpin by which our criminal justice system facilitates the search for truth. Our decision today undermines this first principle of our judicial system by preventing defendant from offering evidence that might well have suggested to a reasonable juror that the principal evidence against defendant was unreliable or incredible.

The instant decision singles out one class of criminal defendants — those accused of sex offenses — and affords them a substantially diluted right of cross-examination, impeding the search for truth in these cases. In criminal trials, "'[t]he special concern with fairness for the defendant . . . stems from the special abhorrence of erroneous conviction.'" *People v Anstey*, 476 Mich 436, 456 (2006) (citation omitted). "The American criminal justice system rightly sets the ascertainment of truth and the protection of innocence as its highest goals." *Harvey v Horan*, 285 F3d 298, 299 (CA 4, 2002). "[A] basic premise of our judicial system [is that] providing more, rather than less, information will generally assist the jury in discovering the truth." *Anstey*, *supra* at 457.

I would reverse the trial court's decision that barred the admission of defendant's evidence. The trial court erred by concluding that the rape-shield statute applied to this case. It further erred by ruling that defendant's proposed evidence was irrelevant and prejudicial. As a result, defendant was deprived of any effective defense and denied his constitutional right of confrontation under the constitutions of the United States and Michigan.

I.  Facts and Procedural History

Defendant was the pastor of a church.  In 2001, the complainant attended a "deliverance" ceremony at the church, a ceremony that was intended to expel evil spirits from the participants.  An estimated 100 people were present.  Of those present, about 20 to 30 were participants from whom evil spirits were to be expelled; the remaining persons were church workers and volunteers who were facilitating the ceremony.  On the morning of the deliverance, the complainant filled out a questionnaire at the church about herself.  In the questionnaire, the complainant alleged that her father, who was also a pastor, had sexually abused her for a 10-year period.  The questionnaire also indicated that the complainant alleged that she had been raped by a demon as a teenager, and that demons continued to torment her by grabbing her ankles in the basement.

During the deliverance, all 100 persons present for the deliverance congregated in a room.  Each person to be "delivered" would sit on a folding chair, while church workers would either sit across from each participant or stand to either side.  During the three-hour deliverance, church workers prayed with and yelled at participants, and lightly struck them to drive out the evil spirits.  Participants apparently were expected to shake, cry, and possibly vomit.  The complainant stated that, during the deliverance, she refused to participate by screaming or crying.  As a consequence, she alleged that defendant approached her with two other male church workers.  These two workers held her by the arms, while defendant stood behind her.  According to the complainant, defendant then rubbed her arms, legs, hair, breasts, and vaginal area.

Defendant was charged with two counts of second-degree CSC with regard to the complainant.  Defendant was also charged with three counts of fourth-degree CSC with regard to two other alleged victims, who also alleged improper touching by defendant during previous religious ceremonies.  Defendant sought to admit the questionnaire into evidence, as well as evidence that suggested that the allegations against the complainant's pastor-father were false.  Defendant sought to introduce the statements regarding the demon-rape to suggest that the complainant's testimony was unreliable.  The trial court refused to admit any of this evidence, citing the rape-shield statute.  The trial court also held that the evidence was not relevant and constituted inadmissible hearsay.

Although defendant acknowledged that he had touched the complainant's arms and legs, and had placed his hands on her head to pray, defendant denied having touched her breasts or vaginal area.  Four other eyewitnesses, who had been immediately present while defendant was near the complainant, testified that no such touching occurred.  None of the other estimated 100 people in the conference room testified that they had seen any inappropriate touching.  After deliberating for 4½ days, the jury acquitted defendant of the five charges brought against him; however, defendant was convicted of one count of fourth-degree CSC with regard to complainant, that offense being a lesser-included offense of second-degree CSC.

The Court of Appeals affirmed, asserting that the disputed evidence was not relevant because the demon-rape and the allegations against complainant's father were "markedly different from [complainant's] allegations against defendant." *People v Piscopo*, unpublished opinion per curiam of the Court of Appeals, issued June 24, 2004 (Docket No. 245835), p 6. Hence, the trial court had "properly excluded the questionnaire evidence as irrelevant and contrary to the rape-shield laws." *Id.* Defendant appealed to this Court, and this case was held in abeyance for *People v Jackson*, 477 Mich 1019 (2007). After *Jackson* was decided, this Court granted leave to appeal. 478 Mich 860 (2007).

## II. Rape-Shield Law

The first issue is whether the rape-shield statute, MCL 750.520j, categorically bars the admission of defendant's proffered evidence, consisting of the complainant's allegations of prior abuse and description of the demon-rape. MCL 750.520j states:

> (1) Evidence of specific instances of the victim's sexual conduct, opinion evidence of the victim's sexual conduct, and reputation evidence of the victim's sexual conduct shall not be admitted under sections 520b to 520g unless and only to the extent that the judge finds that the following proposed evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value:

> (a) Evidence of the victim's past sexual conduct with the actor.

> (b) Evidence of specific instances of sexual activity showing the source or origin of semen, pregnancy, or disease.

Whether particular evidence implicates the rape-shield statute thus hinges on whether that evidence constitutes "specific instances of the victim's sexual conduct, opinion evidence of the victim's sexual conduct, [or] reputation evidence of the victim's sexual conduct . . . ." The statute does not define the term "conduct." See MCL 750.520a (defining other statutory terms for the chapter of the Michigan Penal Code concerning criminal sexual conduct). Hence, it is appropriate to consider relevant dictionary definitions to determine the actual meaning of the term. *Woodard v Custer*, 476 Mich 545, 561 (2006). The term "conduct" is defined as "personal behavior; way of acting; deportment." *Random House Webster's College Dictionary* (1997). The term "behavior" means "the manner of conducting oneself." *Id.* These definitions suggest that "conduct" refers to volitional actions undertaken by a person; such actions would constitute "personal behavior" and "conducting oneself." Thus, "conduct" does not seem to encompass prior sexual abuse, which is involuntary and not a person's "behavior."

This conclusion is buttressed by further analysis of the statute. The term "conduct" is given meaning by its other uses in statutes in the same chapter of the penal

code that criminalize "criminal sexual conduct." For example, MCL 750.520d states that a person is guilty of "criminal sexual conduct in the third degree" if that person

> engages in sexual penetration with another person and if any of the following circumstances exist:
>> (a) [t]hat other person is at least 13 years of age and under 16 years of age.

If "conduct" referred to passive or involuntary activity, then a girl who was raped by a 15-year-old boy would *herself* be guilty of third-degree CSC under the law. However, such an outcome would obviously be absurd and illogical. Hence, the use of "conduct" throughout the relevant statute suggests strongly that the Legislature must have intended "conduct" to refer to volitional behavior and that the term does not encompass involuntary sexual abuse.

Finally, MCL 750.520j distinguishes between "sexual conduct" and "sexual activity" by preventing the admission of "specific instances of the victim's sexual *conduct*" but permitting the admission of "specific instances of the victim's sexual *activity* showing the source or origin of semen, pregnancy, or disease." (Emphasis added.) By using the different terms "conduct" and "activity," the Legislature distinguished between two types of actions. The term "activity" means "1. the state or quality of being active; 2. energetic activity; animation; liveliness." *Random House Webster's College Dictionary* (1997). "Activity" thus refers to a significantly broader sphere of events than "conduct," because "conduct" connotes volition, while "activity" merely connotes some degree of action. By using these terms, the Legislature further indicated that "conduct" refers to volitional activity. This understanding is consistent with the motivating idea of the rape-shield statute, which was to prevent irrelevant inquiries into the sexual histories of victims of criminal sexual conduct.

Because "conduct" requires some volitional element, the rape-shield statute does not apply at all to defendant's proffered evidence. The alleged abuse by the complainant's father and the alleged demon-rape did not implicate voluntary activity on the part of the complainant, and hence could not fairly be described as "conduct" on the part of the complainant within the scope of MCL 750.520j.

Moreover, "testimony concerning prior false allegations does not implicate the rape shield statute." *Jackson*, *supra* at 1019. Defendant offered evidence that the pastor-father denied the allegations made against him by the complainant, thereby raising the question whether the allegations against the pastor-father were false. Similarly, with regard to the demon-rape, jurors should have been permitted to determine whether this allegation was true or false. In neither case did such evidence even implicate the rape-shield statute, and both the trial court and the Court of Appeals erred by concluding that the statute barred admission of the evidence.

## III. Relevance

Even though the rape-shield statute does not bar the admission of defendant's evidence, the proposed evidence must still be relevant in order to be admitted. Both the trial court and the Court of Appeals also held that defendant's evidence was not relevant. "A trial court's decision to admit evidence is . . . reviewed for an abuse of discretion." *Barnett v Hidalgo*, 478 Mich 151, 158-159 (2007). "An abuse of discretion occurs when the decision results in an outcome falling outside the range of principled outcomes." *Id.* at 158.

MRE 401 states:

> "Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

Following this definition of "relevant evidence," MRE 402 then states that "[a]ll relevant evidence is admissible . . . ." However, MRE 403 creates exceptions to the admissibility of relevant evidence:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Even if defendant's proposed evidence is not barred by MCL 750.520j, defendant must nonetheless demonstrate that the evidence is relevant and not rendered inadmissible under MRE 403.

With regard to the complainant's allegations against her father, defendant argued at trial that this evidence was admissible because it suggested that the complainant had made prior false allegations. Prior false allegations shed obvious light on a complainant's credibility. Because the complainant's credibility was the critical issue at trial, and indeed virtually the dispositive issue, evidence bearing on her credibility would clearly "make the existence of any fact that is of consequence to the determination of the action more probable or less probable," and hence would be relevant under MRE 401. See *Jackson*, *supra*; *People v Hackett*, 421 Mich 338, 348 (1984) (stating that evidence of prior false allegations would "not only be relevant, but its admission may be required to preserve a defendant's constitutional right to confrontation").

Defendant also contends that the prior allegations against the complainant's father were relevant to demonstrate the victim's state of mind, namely, to support an inference

that the victim may associate men of the cloth, exercising religious authority over her, with abuse, and that she transferred her experiences or perceptions with regard to her father to her experience with defendant. Jurors thus might conclude that the complainant would be prone to viewing innocent actions of this pastor through a sexual prism. Defendant asserts that on the basis of this theory as well, the complainant's credibility might be called into question and therefore the evidence would be relevant.

Concerning the demon-rape, defendant similarly offered this evidence to demonstrate that the complainant had made prior false allegations. The complainant stated on the day of her "deliverance" that she had been raped by a demon in her attic when she was 17 years old. Jurors are entitled to assess the complainant's credibility using such evidence. See *United States v Jones*, 49 MJ 85, 88 (CAAF, 1998) (holding that evidence that the complainant used a Ouija board and saw demons and spirits was relevant for determining "defects in [the complainant's] capacity to observe events, remember them, and communicate them").

Because the evidence proffered by defendant was clearly relevant to the central issue in his criminal trial — the credibility of the lone witness against him — the trial court's determination to the contrary, in my judgment, was well outside the range of principled outcomes and therefore constituted an abuse of its discretion.

Once evidence is found to be relevant, a court must determine whether MRE 403 nonetheless excludes the relevant evidence as "unfairly prejudicial." "'Evidence is unfairly prejudicial when there exists a danger that marginally probative evidence will be given undue or preemptive weight by the jury.'" *Waknin v Chamberlain*, 467 Mich 329, 334 n 3 (2002), quoting *People v Crawford*, 458 Mich 376, 398 (1998). In this case, the proffered evidence cannot reasonably be described as merely "marginally probative." Rather, the central issue in this case was credibility — the complainant's word against the word of defendant and four eyewitnesses. Hence, any evidence bearing on the credibility of complainant or defendant would have been extremely probative one way or the other. Moreover, because of the critical nature of evidence regarding credibility, the jury could hardly have given such evidence "undue weight" in this case. Instead, the probative value of the evidence was high and the potential prejudice was low. Further, any potential prejudice resulting from the admission of the evidence could have been cured by an appropriate limiting instruction from the trial court. Therefore, the prejudicial nature of the proffered evidence did not "substantially outweigh" its probative value.

For these reasons, I continue to believe that the trial court abused its discretion in preventing the jury from evaluating defendant's evidence. Therefore, I would reverse

and remand for a new trial at which defendant would be allowed to present his proffered evidence on cross-examination.[1]

## IV. Confrontation Clause

This case presents more than an abuse of discretion by the trial court, however. Even if one disagrees with the analysis of the rape-shield statute offered above, reversal of the trial court's exclusion of evidence is still required because that exclusion violated defendant's constitutional right of confrontation, thereby depriving defendant of the ability to adequately defend himself against complainant's accusations. Further, the trial court's understanding of the rape-shield statute, as well as this Court's apparent understanding of that statute, threatens to deprive future defendants in sexual-offense cases of the ability to fully respond to allegations made against them.

The Confrontation Clause of the Sixth Amendment of the United States Constitution states that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him[.]"  See also Const 1963, art 1, § 20. The United States Supreme Court has held that "'[t]he main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination.'" *Davis v Alaska*, 415 US 308, 315-316 (1974) (citation omitted). "Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested." *Id*. at 316. A defendant must be "permitted to expose to the jury the facts from which jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness." *Id*. at 318. In other words, "the right to cross-examine includes the opportunity to show that a witness is biased, or that the testimony is exaggerated or unbelievable." *Pennsylvania v Ritchie*, 480 US 39, 51-52 (1987). The Confrontation Clause is "designed to prevent improper restrictions on the types of questions that defense counsel may ask during cross-examination." *Id*. at 52. As the Sixth Circuit Court of Appeals recently concluded, the Confrontation Clause "affords the right to impeach a witness . . . , subject to the trial court's discretion to impose reasonable limitations to prevent harassment and annoyance of the witness," even if such impeachment evidence "goes only to the witness's credibility." *Vasquez v Jones*, 496 F3d 564, 571 (CA 6, 2007). Of course, the Confrontation Clause does not "prevent[] a trial judge from imposing any limits on defense counsel's inquiry . . . ." *Delaware v Van Arsdall*, 475 US 673, 679 (1986). A trial court may still "impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Id*.

---

[1] The trial court also ruled that defendant's evidence constituted hearsay. Once again, I disagree. To the extent that the evidence was offered to suggest that the complainant had made false allegations of sexual abuse, such evidence was not offered "to prove the truth of the matter asserted."  MRE 801(c).

In the instant case, the trial court prevented defendant from cross-examining the complainant with regard to evidence that might have reflected adversely on the complainant's credibility. Thus, the trial court denied defendant the ability to show that the complainant's testimony was "exaggerated or unbelievable," and denied the jurors, "the sole triers of fact and credibility," the ability to "draw inferences relating to the reliability of the witness." Because the prosecutor's case hinged solely on the credibility of the complainant, defendant was not given the opportunity to effectively cross-examine the complainant's testimony. Moreover, the proffered evidence was highly relevant, not cumulative of other evidence, and would not have been unfairly prejudicial. Any possibility of "confusion of the issues" could have been alleviated in the normal course by a proper jury instruction. Thus, by unduly restricting defendant's ability to cross-examine the complainant on the most critical issue in this case, the trial court violated defendant's rights under the confrontation clauses of the federal and state constitutions.

A Confrontation Clause error does not require reversal if the error was harmless. The United States Supreme Court has stated:

> Whether such an error is harmless in a particular case depends upon a host of factors, all readily accessible to reviewing courts. These factors include the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case. [*Van Arsdall*, *supra* at 684.]

In this case, the complainant's testimony was central to the prosecutor's case, and no other evidence corroborated the complainant's version of events. The defendant's testimony suggesting the falsity of the complainant's *prior allegations of sexual abuse in this sexual-abuse prosecution* were in no way cumulative of any other evidence offered at trial and could not have been more relevant to the jury in determining the truthfulness of the complainant's testimony. In short, the prosecutor's case depended on the credibility of the complainant, and it is reasonable to conclude that admission of the defendant's evidence would likely have caused a different result. Hence, the Confrontation Clause error was not harmless. By violating defendant's right of confrontation, the trial court denied defendant the ability to respond fully to the criminal charges against him. Consequently, I would reverse the trial court's exclusion of defendant's evidence even if the rape-shield statute precludes the admission of such evidence, which I do not believe it does.

## V. Conclusion

Today's decision denies to defendant, an accused sex offender, the same constitutional right to fully defend himself that is granted to accused murderers, burglars, arsonists, and carjackers. It is precisely because sex offenses are so destructive to their victims and so understandably stigmatizing to their perpetrators that the law cannot permit persons to be convicted of these offenses by applying something other than traditional standards of due process. By holding that leave was improvidently granted, this Court rejects the opportunity to authoritatively resolve how the rape-shield statute should be interpreted. Under the contorted and unconstitutional interpretation of the rape-shield statute now countenanced by this Court, the accused sex offender, alone among criminal defendants, is to be restricted in his ability to defend himself — even in a case in which it is his word against the word of another — by being deprived of the ability to fully call into question the credibility of his accuser. And, make no mistake about it, the accuser's credibility in this case is highly dependent on what is made of her allegations of sexual abuse against her father and her claim of having been subject to a demon-rape. I cannot conceive of a reasonable juror — whatever ultimate effect he might accord to this evidence — who would not find it pertinent and helpful in forming a judgment.

Our adversarial system of justice "is premised on the well-tested principle that truth — as well as fairness — is 'best discovered by powerful statements on both sides of the question.'" *Penson v Ohio*, 488 US 75, 84 (1988) (citation omitted). To accomplish this goal of ascertaining guilt, the right of defendants to cross-examine adverse witnesses has been protected as the "'greatest legal engine ever invented for the discovery of truth.'" *California v Green*, 399 US 149, 158 (1970) (citation omitted). If the truth cannot be discovered, then the guilty cannot be punished and the innocent cannot be set free, and the criminal justice system cannot succeed in its essential mission.

I would reverse the trial court's decision that barred the admission of defendant's evidence and remand for a new trial.

CAVANAGH, J., joins the statement of MARKMAN, J.



I, Corbin R. Davis, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

December 7, 2007

Corbin R. Davis
Clerk

t1204