# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
April 4, 2017

Plaintiff-Appellee,

v

No. 329224
Lapeer Circuit Court
LC No. 14-012046-FC

DUSTIN WILLIAM TOMASZYCKI,

Defendant-Appellant.

Before: RIORDAN, P.J., and METER and FORT HOOD, JJ.

PER CURIAM.

Defendant appeals as of right his jury convictions of three counts of first-degree criminal sexual conduct (CSC-I) under MCL 750.520b(1)(a) (sexual penetration of a victim under 13 years of age), one count of CSC-I under MCL 750.520b(1)(b) (sexual penetration of a victim between the ages of 13 and 16 years of age who is related to the defendant or is a member of the defendant's household), one count of CSC-I under MCL 750.520b(1)(f) (sexual penetration accomplished by force or coercion, and causing personal injury), and three counts of second-degree CSC (CSC-II), MCL 750.520c(1)(a) (sexual contact with person less than 13 years of age). The trial court sentenced defendant to prison terms of 40 to 60 years for three of the CSC-I convictions, 35 to 50 years for the other two CSC-I convictions, and 10 to 15 years for each CSC-II conviction. The trial court ordered the five CSC-I sentences to be served concurrently with each other, but consecutively to the three CSC-II sentences. We affirm defendant's convictions, but vacate the trial court's imposition of attorney fees and remand for modification of defendant's judgment of sentence to reflect that only defendant's 40- to 60-year CSC-I sentence for count III and one CSC-II sentence are to be served consecutively.

Defendant was convicted of sexually abusing his daughter, DC, whom he met for the first time when DC was 10 years old. DC previously resided with her mother, but was removed from her mother's custody because of sexual abuse perpetrated against DC by her mother's boyfriend. DC's mother's parental rights to DC were eventually terminated. Defendant sought reunification with DC. He progressed from supervised visitation, to unsupervised visitation, and eventually was awarded custody of DC in December 2007.

According to DC, defendant began sexually abusing her during unsupervised visitation and the abuse continued after DC was placed in defendant's home. DC claimed that the abuse occurred on a regular basis, often several times a week, until 2013, when defendant was arrested

-1-

and charged with multiple counts of criminal sexual conduct against three other minor females who had visited DC at defendant's home. Pursuant to a plea agreement, defendant pleaded no contest to two counts of third-degree CSC (CSC-III), MCL 750.520d, and one count of accosting a child for immoral purposes, MCL 750.145a. He was sentenced to concurrent prison terms of 7-1/2 to 15 years for each CSC-III conviction, and two to four years for the accosting conviction. DC was placed in foster care. In 2014, DC was placed with JC, and eventually disclosed to JC that defendant had also sexually abused her while she was in defendant's custody.

Defendant elected to represent himself at all trial court proceedings and he objected to the trial court's appointment of standby advisory counsel. Before trial, the trial court granted the prosecutor's motion to admit at trial the testimony of the other child victims of defendant's sexual abuse. The trial court also granted the prosecutor's motion to exclude evidence of DC's prior sexual abuse by her mother's boyfriend. At trial, defendant refused to participate in any trial proceedings after jury selection, and he remained absent during the two-day trial.

Defendant first argues that the trial court erred in granting the prosecutor's motion to exclude evidence of DC's previous sexual abuse by her mother's boyfriend. The prosecutor argued that this evidence was inadmissible under the rape-shield statute, MCL 750.520j, and MRE 404(a)(3). Defendant opposed the prosecutor's motion, but did not make an adequate offer of proof in support of admission of the evidence. He argued only that he should be permitted to introduce evidence of another person's sexual assaults against DC because it showed a source of the victim's "mental anguish"[1] and because the prosecutor was permitted to introduce evidence of defendant's sexual assaults against other victims.

On appeal, defendant now argues that the evidence of DC's history of sexual abuse by another person should not have been excluded under MCL 750.520j because that statute does not extend to prior incidents in which the complainant was a victim of sexual abuse. He further argues that exclusion of this evidence violated his rights under the Confrontation Clause. Because defendant did not raise either of these arguments in the trial court, they are unpreserved. *People v Welch*, 226 Mich App 461, 464; 574 NW2d 682 (1997). Accordingly, we review the issues for plain error affecting defendant's substantial rights. *People v Moorer*, 262 Mich App 64, 68; 683 NW2d 736 (2004). To obtain relief, defendant must demonstrate (1) that an error occurred, (2) that the error was plain error, and (3) that the plain error affected his substantial rights. *Id*. Questions of law relating to the admission of evidence, including questions of statutory interpretation, are reviewed de novo. *People v Feeley*, 499 Mich 429, 434; 885 NW2d 223 (2016); *People v Lane*, 308 Mich App 38, 51; 862 NW2d 446 (2014).

MCL 750.520j provides, in pertinent part:

(1) Evidence of specific instances of the victim's sexual conduct, opinion evidence of the victim's sexual conduct, and reputation evidence of the victim's sexual conduct shall not be admitted under sections 520b to 520g unless and only to the extent that the judge finds that the following proposed evidence is material

---

[1] Defendant did not elaborate upon this vague argument.

to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value:

> (a) Evidence of the victim's past sexual conduct with the actor.

> (b) Evidence of specific instances of sexual activity showing the source or origin of semen, pregnancy, or disease.

MRE 404(a)(3) similarly provides:

> **(a) Character evidence generally.** Evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion, except:

> * * *

> (3) *Character of alleged victim of sexual conduct crime*. In a prosecution for criminal sexual conduct, evidence of the alleged victim's past sexual conduct with the defendant and evidence of specific instances of sexual activity showing the source or origin of semen, pregnancy or disease . . . .

Defendant contends that the rape-shield statute does not preclude evidence that a complainant was a victim of sexual assault committed by persons other than the defendant. He argues that the statute and the evidentiary rule preclude evidence of a victim's sexual conduct, character, or reputation, and contends that non-consensual sexual acts are outside the scope of, and thus not precluded by, the statute. We reject this argument, which has been considered and rejected by a prior panel of this Court. See *People v Duenaz*, 306 Mich App 85, 92; 854 NW2d 531 (2014).[2]

As defendant correctly observes, however, "in limited situations evidence the [rape-shield] statute excludes may nevertheless be relevant and admissible to preserve a defendant's constitutional right of confrontation." *Id*. at 93. "[T]rial courts must balance the rights of the victim and the defendant in each case." *People v Benton*, 294 Mich App 191, 198; 817 NW2d 599 (2011). Whether evidence that is barred by the rape-shield statute will be admissible to preserve a defendant's constitutional rights will depend on the purpose for which the evidence is offered, and the right to confront witnesses does not include a right to cross-examine regarding irrelevant issues. *Duenaz*, 306 Mich App at 91, 93.

---

[2] Moreover, defendant's reliance on Justice MARKMAN'S dissenting opinions in *People v Parks*, 483 Mich 1040; 766 NW2d 650 (2009), and *People v Piscopo*, 480 Mich 966; 741 NW2d 826 (2007), is misplaced because the dissents are nonbinding.

In this case, defendant did not make an adequate offer of proof regarding why DC's prior history of sexual abuse was relevant or necessary to his defense. Defendant did not explain how the evidence was necessary to protect his constitutional right of confrontation or to present a defense. Because defendant did not establish the relevancy of the evidence to DC's credibility or to any defense theory offered at trial, the trial court did not err by excluding the evidence.

Defendant next argues that the trial court exceeded its authority and violated defendant's right to due process by permitting prosecution witnesses to testify with the aid of a support canine. Whether a trial court has the authority to permit the use of a support canine is a question of law that we review de novo. See, e.g., *People v Johnson*, 315 Mich App 163, 175-178; 889 NW2d 513 (2016). Whether this procedure violates a defendant's right to due process is also reviewed de novo. See, generally, *People v Dimambro*, ___ Mich App ___, ___; ___ NW2d ___ (2016) (Docket No. 332319); slip op at 4, lv pending (discussing due process claims).

In *Johnson*, 315 Mich App at 177-178, this Court noted that a trial court has the inherent authority "to employ procedures that assist a witness when testifying," and concluded that this authority permits the court to allow a support canine to accompany a witness while testifying. This Court also addressed the process for determining whether the use of a support canine violates a defendant's right to due process. *Id*. at 179. This Court initially decided whether the procedure should be deemed "inherently prejudicial." *Id*. This Court answered this question in the negative, stating:

> Similar to a victim's use of a protective screen when testifying, a reasonable jury could conclude that the support animal is being used to calm the witness's general anxiety about testifying or simply being in an unfamiliar setting. . . . Thus, the practice does not give rise to *primarily* prejudicial inferences, as it is possible for the jury to make a wide range of inferences from the use of this procedure that are unrelated to defendant. . . . In addition, the use of a support animal is unlike the inherently prejudicial practices of clothing a defendant in his prison outfit or the shackling of a defendant, as the use of a support animal does not brand[ ] a defendant with the mark of guilt. . . . Instead, the support animal is merely present to assist the witness, and the presence of the animal does not reflect upon the guilt or innocence of a defendant. Therefore, the use of a support animal does not create an unacceptable risk . . . of impermissible factors coming into play. [*Id*. at 180 (citations and quotation marks omitted).]

In light of these observations in *Johnson*, we reject defendant's argument that "[a] jury would very likely see a trial judge allowing a support dog to sit with the girls while they testify as acknowledgment of the truthfulness of their allegations, regardless of instructions." The *Johnson* Court stated that because "the challenged practice is not inherently prejudicial, defendant is required to show that he was actually prejudiced by the practice." *Id*. at 181. In the present case, defendant has not done so.

Defendant argues that the trial court should have made findings for each witness who used the support canine to determine whether there was good cause to allow the dog. Nothing in *Johnson* supports this argument. Although defendant further argues that there was no need for any witness to use the dog because he was absent from the courtroom, testifying in the presence

of the defendant is only one of many factors that can cause stress to a witness testifying about a sexual assault. Indeed, defendant's absence did not relieve any anxiety associated with being questioned in a public forum about prior incidents of sexual abuse, and reciting the unpleasant details of the attacks. Defendant has not cited any circumstances that distinguish the instant case from *Johnson* or that establish that the use of the support animal created an unacceptable risk of the jury being influenced by impermissible factors. We note that any potential for prejudice was alleviated by the trial court's jury instruction that the use of the canine must not be a factor considered during the jury's deliberations. "It is well established that jurors are presumed to follow their instructions." *People v Graves*, 458 Mich 476, 486; 581 NW2d 229 (1998). Accordingly, we reject this claim of error.

Defendant next argues that the trial court erred by allowing the prosecutor to introduce evidence of defendant's sexual abuse of three other girls, NR, LR, and SK. We review a trial court's decision to admit evidence for an abuse of discretion. *Lane*, 308 Mich App at 51.

The challenged testimony was offered and admitted under MCL 768.27a, which provides:

> (1) Notwithstanding [MCL 768.27[3]], in a criminal case in which the defendant is accused of committing a listed offense against a minor, evidence that the defendant committed another listed offense against a minor is admissible and may be considered for its bearing on any matter to which it is relevant. If the prosecuting attorney intends to offer evidence under this section, the prosecuting attorney shall disclose the evidence to the defendant at least 15 days before the scheduled date of trial or at a later time as allowed by the court for good cause shown, including the statements of witnesses or a summary of the substance of any testimony that is expected to be offered.

> (2) As used in this section:

> (a) "Listed offense means that term as defined in section 2 of the sex offenders registration act, 1994 PA 295, MCL 28.722.

> (b) "Minor means an individual less than 18 years of age.

"Relevant evidence" is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401; *People v Bergman*, 312 Mich App 471, 483; 879 NW2d 278 (2015). Generally, relevant is admissible, and irrelevant evidence is not admissible. MRE 402; *Bergman*, 312 Mich App at 483. Relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . ." MRE 403; *Duenaz*, 306 Mich App at 90.

---

[3] MCL 768.27 "essentially parallels MRE 404(b)." *People v Watkins*, 491 Mich 450, 469 n 44; 818 NW2d 296 (2012).

In *People v Watkins*, 491 Mich 450; 818 NW2d 296 (2012), the Michigan Supreme Court addressed the conflict between MCL 768.27a and MRE 404(b), which "requires the exclusion of other-acts evidence if its only relevance is to show the defendant's character or propensity to commit the charged offense." *Watkins*, 491 Mich at 468. The Court held that "the language in MCL 768.27a allowing admission of another listed offense 'for its bearing on any matter to which it is relevant' permits the use of evidence to show a defendant's character and propensity to commit the charged crime, precisely that which 404(b) precludes." *Watkins*, 491 Mich at 470. Consequently, MCL 768.27a supersedes MRE 404(b) by "establish[ing] an exception to MRE 404(b) in cases involving a charge of sexual misconduct against a minor." *Watkins*, 491 Mich at 471. However, MCL 768.27a remains subject to MRE 403, which allows the court to exclude relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice. *Watkins*, 491 Mich at 481. The Court in *Watkins* explained:

> Accordingly, when applying MRE 403 to evidence admissible under MCL 768.27a, courts must weigh the propensity inference in favor of the evidence's probative value rather than its prejudicial effect. That is, other-acts evidence admissible under MCL 768.27a may not be excluded under MRE 403 as overly prejudicial merely because it allows a jury to draw a propensity inference. . . .

> This does not mean, however, that other-acts evidence admissible under MCL 768.27a may never be excluded under MRE 403 as overly prejudicial. There are several considerations that may lead a court to exclude such evidence. These considerations include (1) the dissimilarity between the other acts and the charged crime, (2) the temporal proximity of the other acts to the charged crime, (3) the infrequency of the other acts, (4) the presence of intervening acts, (5) the lack of reliability of the evidence supporting the occurrence of the other acts, and (6) the lack of need for evidence beyond the complainant's and the defendant's testimony. This list of considerations is meant to be illustrative rather than exhaustive. [*Watkins*, 491 Mich at 487-488.]

Applying these factors to the instant case, the first three clearly do not weigh in favor of excluding the other-acts evidence. Defendant's assaults against the three other victims were similar to the acts committed against DC. The girls were of similar age to DC and were her friends, and defendant took measures to have each girl isolated from other persons in the house, similar to how he isolated DC in the same house. Similar to his assaults on DC, defendant caused NR to have difficulty breathing when he forced her to perform oral sex on him. These events transpired during the period that DC was living with defendant and enduring his abuse on a regular basis. The acts were not infrequent. DC testified that defendant abused her at least twice weekly. NR, LR, and SK testified that defendant abused them when they were in his home. This pattern reveals that defendant used nearly all the opportunities he had to abuse his daughter and her friends.

With respect to the fourth factor, there were no intervening acts separating defendant's assaults against DC and his assaults against the other girls. Regarding the fifth factor, the reliability of the other-acts evidence was supported by the fact that the three witnesses gave clear and consistent accounts of the sexual abuse. The sixth factor, "lack of need for evidence beyond the complainant's and the defendant's testimony," also does not weigh strongly in favor of

excluding the evidence. DC provided explicit and detailed testimony of defendant's repeated abuse over a period of years. However, DC never reported the abuse during the years in which it allegedly occurred, so a jury may have been disinclined to believe her testimony without corroborating testimony by other victims.

Defendant raises an additional consideration, namely, that LR's testimony should be deemed more prejudicial than probative because her physical and mental disabilities made her even more vulnerable than the other victims. We disagree. MCL 768.27a authorizes admission of propensity evidence, overriding the concerns underlying MRE 404(b) that "a jury will convict the defendant inferentially on the basis of his bad character rather than because he is guilty beyond a reasonable doubt of the crime charged." *Watkins*, 491 Mich at 468 (citation and quotation marks omitted). Although LR's physical and mental disabilities may have made her more vulnerable than the other victims, that increased vulnerability does not lessen the probative value of the evidence for purposes of establishing defendant's propensity to commit sexual assaults against underage female victims. Further, DC also was more vulnerable, in some ways, than the other victims because of her dependency on defendant for food and shelter. DC testified that defendant withheld food from her and demanded sexual favors from her before he would give her lunch money. The evidence of defendant's willingness to exploit LR's enhanced vulnerabilities to engage in sexually abusive acts against her was probative of the credibility of DC's testimony that defendant would also exploit DC's dependency-related vulnerability to commit sexually abusive acts against DC. Thus, LR's enhanced vulnerability was not a basis for excluding her testimony.

In sum, consideration of the relevant factors supports the trial court's decision to admit the other-acts evidence as more probative than prejudicial. Moreover, the trial court reduced any potential for unfair prejudice by instructing the jury that it should not convict defendant "solely because you think he is guilty of other bad conduct." We find no basis for reversal.

Defendant next argues that the trial court erred by ordering his five CSC-I sentences to be served consecutively to his three CSC-II sentences. "In Michigan, concurrent sentencing is the norm, and a consecutive sentence may be imposed only if specifically authorized by statute." *People v Ryan*, 295 Mich App 388, 401; 819 NW2d 55 (2012) (citation and quotation marks omitted). Whether a statute authorizes consecutive sentencing is a matter of statutory construction, which we review de novo. See, generally, *People v Corbin*, 312 Mich App 352, 361; 880 NW2d 2 (2015).

The first-degree CSC statute, MCL 750.520b, provides, in pertinent part:

> (3) The court may order a term of imprisonment imposed under this section to be served consecutively to any term of imprisonment imposed for any other criminal offense *arising from the same transaction*. [Emphasis added.]

Thus, consecutive sentencing is authorized under MCL 750.520b(3) only for offenses arising from the same criminal transaction. *People v Bailey*, 310 Mich App 703, 725; 873 NW2d 855 (2015).

In *Bailey*, this Court explained:

[A]n ongoing course of sexually abusive conduct involving episodes of assault does not in and of itself render the crimes part of the same transaction. For multiple penetrations to be considered as part of the same transaction, they must be part of a continuous time sequence, not merely part of a continuous course of conduct. [*Id.* at 725 (citations and quotation marks omitted).]

In *Ryan*, 295 Mich App at 402-403, this Court held that two convictions arose from the same transaction where one pertained to an act of vaginal intercourse and the other pertained to an act of oral intercourse, and the former act was committed directly before the latter act. Conversely, in *Bailey*, this Court held that consecutive sentencing was not permitted where the defendant was convicted of multiple acts of CSC against three different victims; this Court stated:

Count I alleged that defendant committed CSC-I against MB between August 1, 2008, and November 2008. Although a brief time overlap exists, there is no evidence that defendant's commission of Count I occurred in the same transaction as the offense against AB (Count III), who left for boarding school in August 2008. Count I clearly did not occur during the same transaction as the offense against BS (Count IV), who testified about a single occurrence in the summer of 2007. While the jury convicted defendant of another count of CSC-I against MB (Count II) in an approximately seven-year time period, there is no evidence in the record that MB was subject to several distinct acts of penetration sufficient to constitute the same transaction or that Count II was committed in the same transaction as Counts III or IV or both. Accordingly, we conclude that the trial court did not possess the statutory authority to impose consecutive sentences and that doing so was plain error. [*Bailey*, 310 Mich App at 725-726.]

In this case, defendant was convicted of three counts of CSC-I and three counts of CSC-II for offenses committed when DC was under 13 years of age. DC testified that defendant made her do "oral" or "hand job[s]," and then testified as follows concerning count III, the first incident in which defendant coerced her to submit to anal intercourse:

It was after the girls had gone to bed, and maybe eleven at night. And he had me on the couch, and it started off as just the touching. And then he said -- I don't remember what the first part was, but he basically said he wanted to try something new.

So he pulled down my pants and my underwear, and he put his penis up my butt.

DC's testimony that "it started off as just the touching," after which defendant engaged in an act of anal penetration, establishes that defendant committed separate acts of CSC-I and CSC-II as part of the same transaction. Although DC testified regarding an ongoing course of sexual abuse over a period of years, this was the only incident in which the testimony clearly established that separate acts of CSC-I and CSC-II were committed as part of the same transaction. Plaintiff cites DC's testimony regarding incidents when she was forced to perform oral sex and to manually stimulate defendant's penis. However, DC's testimony does not establish that these

acts occurred as part of the same transaction. Accordingly, the trial court erred in ordering that the sentences for all three CSC-II convictions be served consecutively to all five sentences for the CSC-I convictions.

In sum, because the evidence identified only one instance in which an act of CSC-I (count III) and an act of CSC-II arose from the same transaction, only the sentences for count III (40 to 60 years) and one count of CSC-II may run consecutively. We therefore remand for correction of defendant's judgment of sentence consistent with this opinion.

Finally, defendant argues that the trial court erred in assessing him attorney fees of $4,255 for the cost of standby counsel. MCL 769.1k(1)(b)(*iv*) authorizes a trial court to impose on a defendant costs for "[t]he expenses of providing legal assistance to the defendant." In the instant case, defendant consistently asserted his right to self-representation and objected to the appointment of standby counsel. He also objected to the imposition of attorney fees for services that he did not request and did not receive. Significantly, plaintiff concedes that attorney fees should not have been imposed under these circumstances. Accordingly, we vacate the portion of defendant's judgment of sentence imposing attorney fees.

We affirm defendant's convictions, vacate the trial court's imposition of attorney fees, and remand for modification of defendant's judgment of sentence to reflect consecutive sentencing only for defendant's CSC-I sentence of 40 to 60 years for count III and one CSC-II sentence. We do not retain jurisdiction.

/s/ Michael J. Riordan
/s/ Patrick M. Meter
/s/ Karen M. Fort Hood