NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0870n.06

No. 09-4543

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

*Dec 21, 2011*

LEONARD GREEN, Clerk

GAREY SMITH,

    Petitioner-Appellant,

v.

JOHN COLEMAN, Warden,

    Respondent-Appellee.

)
)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF OHIO

Before: DAUGHTREY, CLAY, and STRANCH, Circuit Judges.

MARTHA CRAIG DAUGHTREY, Circuit Judge.   Petitioner Garey Smith, an Ohio

prisoner proceeding *pro se*, appeals the district court's judgment denying his request for

relief under the federal habeas statute, 28 U.S.C. § 2254.  In the district court, Smith raised

various claims, but the only issue certified by the district court for our review concerns

Smith's contention that he was denied due process based on prosecutorial misconduct –

specifically, improper comments made during the rebuttal portion of the state's closing

argument.  The district court adopted the report and recommendation of the magistrate

judge, who reviewed the petitioner's claims *de novo*, an exercise we find unnecessary,

given that the Ohio Court of Appeals had already reviewed the issue on direct appeal and

resolved it appropriately. We nevertheless affirm the denial of relief, concluding that the result reached by the district court was correct.

The charges against Smith were based on a 2001 shooting incident that resulted in the death of one victim, Jimmy Gordon, and serious injury to three others. Smith never denied that he shot the four men, but he claimed that he acted in self-defense after the victims had advanced on him in a threatening manner. As it turned out, however, Smith was the only one armed, and all the shots fired came from his weapon. Because the three wounded victims were available to testify, along with several bystanders and police officers who arrived on the scene, it became necessary to destroy the credibility of virtually all the state's witnesses at trial in order to maintain Smith's theory of self-defense. The prosecutor's response to that trial strategy produced the legal dispute now before us. It arose during the second trial in a convoluted path of litigation that resulted in three trials in state court, two direct appeals, a state postconviction hearing and appeal, two federal habeas proceedings, and at least three appeals filed in this court, one other of which is still pending, bearing case number 10-3280.[1]

_____

[1]In 2002, a jury found Smith guilty of a single count of murder, two counts of attempted murder, six counts of felonious assault with firearm specifications, and possession of a weapon while under a disability. The Ohio Court of Appeals reversed the convictions and remanded the case for a new trial because Smith was denied the right to represent himself. State v. Smith, No. C-020610, WL 102285 (Ohio Ct. App. Jan. 23, 2004). At a second trial, the jury found Smith guilty of six counts of felonious assault and possession of a weapon under a disability; but the jury could not reach a verdict on the murder charge. The Ohio Court of Appeals reversed two of the assault convictions and remanded for re-sentencing. State v. Smith, 168 Ohio App.3d 141, 858 N.E. 2d 1222 (2006). It is the second trial and conviction that is the subject of the current habeas

The habeas petition now before us, charging prosecutorial misconduct occurring in Smith's second state trial, is governed by provisions of the Antiterrorism and Effective Death Penalty Act of 1996, P.L. 104-132, 110 Stat. 1214 (1996) (AEDPA), which directs the federal courts to review constitutional claims decided by the state courts on the merits under the following standards:

> An application for writ of habeas corpus on behalf of a person in custody pursuant to the judgment of the state court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.
>
> \* \* \* \* \*
>
> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. §§ 2254(d)(1), (d)(2), and (e)(1).

---

litigation.

The question in No. 10-3280 is unrelated to the claim raised here. It involves the Double Jeopardy Clause, which Smith invoked both before, during, and after his second trial, claiming that his retrial after reversal of his initial conviction by the Ohio Court of Appeals violated the constitutional protection against twice being placed in jeopardy.

At a third trial, Smith was acquitted of murder.

In this case, the district court adopted the magistrate judge's report and recommendation, including the magistrate's determination that the merits of Smith's claim should be reviewed *de novo* because the state court had analyzed the constitutional issues under state rather than under federal law. However, our study of the state court record indicates that the Ohio Court of Appeals, the last court to review the matter, did, in fact, rely at least in part on United States Supreme Court precedent, specifically applying the reasoning of Smith v. Phillips, 455 U.S. 209, 219 (1982), for the proposition that "[prosecutorial] misconduct review focuses on 'the fairness of the trial, not the culpability of the prosecutor.'" State v. Smith, 168 Ohio App.3d 141, 858 N.E. 2d 1222, 1246 (2006). Moreover, we have recently been admonished by the Supreme Court that the limitations in section 2254(d) apply even "when a state court's order is unaccompanied by an opinion explaining the reasons relief has been denied." Harrington v. Richter, 131 S. Ct. 770, 784 (2011). As a result, "a state court need not cite or even be aware of [Supreme Court] cases" in order to withstand challenge in section 2254 cases. Id. (citing Early v. Packer, 537 U.S. 3, 8 (2002) (*per curiam*)); *see also* Treesh v. Bagley, 612 F.3d 424, 429 (6th Cir. 2010) (internal quotation marks and citation omitted), *cert. denied*, 131 S. Ct. 1678 (2011) ("[T]he state court decision need not cite Supreme Court cases, or even evince an awareness of [them], so long as neither the reasoning nor the result of the stat-court decision contradicts them.").

It follows that the district court was not required to review Smith's claims *de novo* and, instead, should have done so under the dictates of AEDPA , *i.e.,* seeking to determine

whether the Ohio Court of Appeals's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or was "based on an unreasonable determination of the facts" in the case against Smith. 28 U.S.C. § 2254(d). As it turns out, however, the result is the same under either standard, because the district court applied the same constitutional due process standard as did the state court.

On direct appeal from Smith's convictions for felonious assault and related weapons charges at his second trial, the state appeals court analyzed Smith's prosecutorial misconduct claim and concluded that Smith had not been deprived of a fair trial:

> The prosecution is generally entitled to a "certain degree of latitude" in closing argument, but it must not attempt to obtain a conviction by going beyond the evidence that is before the jury. *State v. Smith* (1984), 14 Ohio St.3d 13, 14, 14 OBR 317, 470 N.E.2d 883. The trial court in its discretion generally determines the propriety of closing arguments. See *State v. Maurer* (1984), 15 Ohio St.3d 239, 269, 15 OBR 379, 473 N.E.2d 768.

> Where defense counsel has objected to improper remarks in closing argument, a conviction should be reversed if the improper remarks "prejudicially affected substantial rights of the defendant." *Smith*, 14 Ohio St.3d at 14, 14 OBR 317, 470 N.E.2d 883. Thus, unless the trial court has taken specific actions that have tempered the prejudice from the comments, "it must be clear beyond a reasonable doubt that, absent the prosecutor's comments, the jury would have found [the] defendant guilty." *Id*. at 15, 14 OBR 317, 470 N.E.2d 883. Where the defendant has failed to object to improper comments, this court will reverse only when the defendant has demonstrated plain error. Plain error is an obvious error or defect in the trial affecting substantial rights and "but for the error, the outcome of the trial court clearly would have been otherwise." *State v. Williams* (1997), 79 Ohio St.3d 1, 12, 679 N.E.2d 646; *see, also*, Crim.R. 52(B).

> Smith objected several times during the state's rebuttal closing argument. First, Smith objected after the prosecutor accused defense counsel of

"sandbagging" the state by using Franklin's medical records in closing argument to undermine Franklin's credibility. The medical records indicated that Franklin was shot in the front of his leg, contradicting Franklin's testimony that he was shot in the back of his leg. The medical records were admitted into evidence, but defense counsel did not cross-examine Franklin on this discrepancy. Rather, defense counsel referred to the medical records in closing argument to discredit Franklin's testimony that he was attempting to flee when he was shot.

The "sandbagging" accusation was improper and unfounded. *See Williams*, 79 Ohio St.3d at 14, 679 N.E.2d 646. The state had possessed Franklin's medical records for over three years and had used them in Smith's first trial. But Smith's objection to the derogatory reference to defense counsel was sustained, and the trial court instructed the jury to disregard the comment.

Next, Smith complains that the prosecutor improperly insinuated to the jury that defense counsel did not believe his client's defense. The prosecutor stated in reference to Smith's closing argument, "We give closing argument. We're going to talk about self-defense for five minutes. That's how strong that self-defense theory is, isn't it? Five minutes of an hour-and-a-half closing argument. We don't want to get anywhere near that self-defense argument."

Smith objected, but before the court could rule, the prosecutor added, "Because his story is so incredible." The trial court overruled Smith's objection to these comments.

The prosecutor's first comment was improper for two reasons: (1) it mischaracterized Smith's closing argument, which almost in its entirety refuted the state's claim that Smith did not shoot the victims in self-defense, and (2) it attempted to present the jury with the irrelevant but potentially prejudicial insinuation that defense counsel personally thought that Smith was guilty. *See State v. Keenan* (1993), 66 Ohio St.3d 402, 405-406, 613 N.E.2d 203. But the prosecutor had earlier made a similar comment that Smith had not objected to, and the jury was informed on several occasions that closing argument was merely argument.

The prosecutor's additional comment that Smith's claim of self-defense was "incredible" came close to an improper expression of the prosecutor's personal opinion about Smith's guilt. But the prosecutor followed the comment with a summary of the state's evidence contradicting Smith's defense, rendering the comment arguably within the latitude afforded counsel. *Id*. at 408, 613 N.E.2d 203.

Later, the prosecutor cited matters not in evidence when he insinuated that Smith had come up with his self-defense theory only after the crime laboratory found gunshot residue on Gordon. The prosecutor had made a similar statement earlier in closing argument, when he, without objection, "testified" that Smith did not claim self-defense when proceedings were first instituted against him.

But the prosecutor did tie this argument to the evidence by illustrating that Smith did not mention self-defense to Pat Barry when Barry drove Smith to the police station to turn himself in. Further, after Smith objected to the comment about the timing of the defense in relationship to the release of the crime lab report, the trial court informed the jury that closing argument was not evidence and that the jury was to determine the facts of the case.

We hold that the trial court's actions in response to Smith's objections were sufficient to eliminate any prejudice from the prosecutor's misconduct, and that the jury would have found Smith guilty absent the prosecutor's improper remarks.

Next we review other comments that Smith alleges were improper but that were not objected to at trial. The prosecutor referred to defense counsel's attack on the credibility of the state's witnesses as "outrageous" and called the self-defense theory "ridiculous." The prosecutor also attempted to inject emotion into the jury's deliberations and again "testified" by adding, "I'm fighting for Jimmy Gordon. If you think the Prosecutor's Office--I guess, you know, I guess there is [*sic*] some people out there that say, well, they don't fight for a black, a black person who is a drug dealer. Well, I got news for you, that's exactly what Dave and I, Dave Feldhaus, are doing." But Smith did not object to these remarks, and they were not so egregious in the context of the entire trial that they denied Smith a fair trial, especially in light of the substantial evidence in support of his conviction.

Smith, 858 N.E.2d at 1244-46.

After a careful review of the record, we are not persuaded that findings by the Ohio Court of Appeals was appropriate in every respect. For example, defense counsel did, in fact, devote very little of his closing argument to the specifics of his theory of self-defense, instead attacking at great length the credibility of the prosecuting witnesses, even the

disinterested bystanders, and arguing that the police witnesses were "shading their testimony" to "cover their butts." Indeed, the nature and extent of the defendant's closing argument led the federal magistrate judge to rule that many of the prosecutor's challenged comments in response were, at most, "invited error." As for the prosecutor's comment about "sandbagging," it was undoubtedly meant to imply that the *jury* was being sandbagged in some sense, not that defense counsel was trying to sandbag the state. Nevertheless, it is quite obvious from these two instances, as well as others, that any questionable calls made by the Ohio Court of Appeals were made in the defendant's favor and not the state's. Despite its apparent misgivings about the tone and content of the closing arguments, the state court was able to find, reasonably we conclude, that the prosecutor's comments in closing argument had not deprived Smith of a fair trial.

Federal law is well-established along the same lines of analysis as that employed by the state court in this case. In order to warrant relief in a federal habeas case, a prosecutor's misconduct must have been so egregious that it "infected the trial with unfairness [so] as to make the resulting conviction of denial of due process." Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974). Given the substantial amount of evidence of guilt, the fact that the challenged comments were confined to closing argument, and the state trial judge's curative instructions to the jury, it follows that the opinion of the Ohio Court of Appeals was not "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," nor was it "based on an unreasonable determination of the facts in light of the evidence

presented in the State court proceeding."  28 U.S.C. § 2254(d)(1) and (2).  Hence, there

was no basis on which to premise habeas relief, as the district court correctly concluded.

For the reasons set out above, we AFFIRM the judgment of the district court.