NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0470n.06

No. 10-2617

# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED

*May 02, 2012*

LEONARD GREEN, Clerk

GENNARO PISCOPO,

      Petitioner-Appellant,

      v.

STATE OF MICHIGAN,

      Respondent-Appellee.

On Appeal from the United
States District Court for the
Eastern District of Michigan

_____/

**Before:**    **GUY, COLE, and ROGERS, Circuit Judges.**

    **RALPH B. GUY, JR., Circuit Judge.**   Defendant Gennaro Piscopo seeks review of the district court's denial of his *habeas corpus* petition. Piscopo, a pastor, was sentenced by a Michigan state court to five years of probation following his conviction on one count of fourth-degree criminal sexual conduct (CSC) stemming from contact with a participant in a church ceremony. He asserts that the state trial court's exclusion of certain evidence violated his constitutional rights to confront witnesses and present a defense. Because the adjudication of these issues by the state courts represents a reasonable application of Supreme Court precedent, we affirm.

I.

Complainant KB was a participant in a deliverance ceremony at the church run by Pastor Piscopo in November 2001. Approximately 100 people were in attendance, one-third or fewer to be delivered from evil spirits, and the balance to assist with the ceremony. During the pertinent part of the events at the church that day, the deliverance participants sat on folding chairs, with church workers and/or volunteers surrounding them, yelling at or praying with the participants.

KB described her involvement in the ceremony as less than fully engaged. For this reason, she was approached by Piscopo several times during the proceedings. KB alleged that during one of these encounters, Piscopo instructed his assistants to restrain KB while he touched and rubbed her breasts and genital area. KB described this behavior to law enforcement the day after the deliverance ceremony.

Piscopo was charged with two counts of second-degree CSC for his conduct with KB. He was also charged with separate counts of fourth-degree CSC involving two other participants in deliverance ceremonies. No physical evidence was presented at trial, and KB was the only source of evidence against Piscopo with regard to her allegations.[1] At trial, Piscopo sought to introduce statements made by KB on a couple of pages of a lengthy questionnaire she submitted the day of the deliverance she attended. In that paperwork, KB stated that she had been abused by her father, also a pastor, over a 10-year period when she was a child. She also recounted her fear of demons and her belief that she had been raped by a demon as a teenager.

---

[1]Piscopo emphasizes that numerous witnesses testified that they had personally observed the interaction between KB and Piscopo, but had seen no offensive contact.

As described by the Michigan Court of Appeals, the trial court excluded all of the KB questionnaire evidence for the reasons that:

> (1) the evidence was not relevant; (2) KB's assertions were hearsay and did not fall under the business records exception argued by defendant, MRE 803(6); and (3) some of the statements were barred by the rape-shield statute, MCL 750.520j, and evidentiary rule, MRE 404(a)(3).

*People v. Piscopo*, No. 245835, 2004 WL 1416282, at *4, (Mich. Ct. App. June 24, 2004).

Following four and a half days of deliberation, Piscopo was convicted by a jury on one lesser-included count of fourth-degree CSC as to KB. He was found not guilty on all remaining counts, including those involving other complainants. He was sentenced to five years of probation and ordered to pay restitution.[2] Piscopo's direct appeal was unsuccessful. *See id.* His application for leave to appeal to the Michigan Supreme Court was ultimately denied. *See People v. Piscopo*, 741 N.W.2d 826 (Mich. 2007).

Piscopo then sought *habeas* review of his conviction in the district court. The district court denied the petition on the merits. Piscopo appealed the district court's decision and requested a certificate of appealability from both the district court and this court, enumerating three distinct claims. The district court granted a certificate of appealability as to Piscopo's first and second claims, which both address information given by KB in her questionnaire and allege violations of his constitutional rights.[3] These are the claims before us on appeal.

II.

---

[2] As a result of the conviction, Piscopo was also required to register as a sex offender.

[3] Piscopo then sought an expanded certificate to include his third claim, which asserted that his due process rights were violated by the trial court when it excluded expert testimony concerning how intense emotions can affect perception. We denied the expansion of the certificate by order dated May 20, 2011.

A.     *Habeas* Review

We review *de novo* the legal conclusions made by a district court in a *habeas corpus* proceeding. *Villagarcia v. Warden, Noble Corr. Inst.*, 599 F.3d 529, 533 (6th Cir. 2010). Under the provisions of the Antiterrorism and Effective Death Penalty Act of 1996, which applies to this case, a federal court may grant the writ of *habeas corpus* with respect to a "claim that was adjudicated on the merits in State court proceedings," if that adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).[4]

A state court decision is "contrary to" established Supreme Court law if (1) "the state court applies a rule that contradicts the governing law set forth in our cases," or (2) "the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). Concerning the question of an "unreasonable application," "a federal *habeas* court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established

---

[4]In the instant case, the parties dispute the applicable standard as to the evidence of abuse by demons, because Piscopo's claim concerning this evidence was not specifically discussed by the Michigan Court of Appeals. This issue is discussed in conjunction with that claim, below.

federal law erroneously or incorrectly. Rather, that application must also be unreasonable."
*Id*. at 411.

## B.      Sexual Abuse by Pastor-Father

We will first address the statements in KB's questionnaire concerning the alleged abuse by her father, also a pastor.[5] In that document, KB wrote that when she was seven years old, her father "stood naked in the bathtub, soaped up, tried to get [her] to touch him," and that this continued for 10 years. When cross-examining her on this statement for purposes of making an appellate record, outside of the hearing of the jury, defense counsel asked KB if it would surprise her if her father told an investigator KB's allegations were untrue.

In his brief, Piscopo states that this evidence was admissible to show that KB's perception of the events at the deliverance ceremony was unreliable. He states that his "argument to the jury would have been that [KB] had a bias against male pastors because of her bad experiences with a pastor who happened to also be her father," and that this bias "caused her to perceive the touchings as sexual when in fact they were not."

---

[5]We note that this evidence is not even mentioned in Piscopo's actual *habeas* petition. In that document, he lists only two grounds raised:

> Whether the Petitioner's constitutional right of confrontation was violated when he was not allowed to question his accuser about her statement that she was raped by a demon?

> Whether the Petitioner's rights to Due Process and a Fair Trial under the Michigan and Federal Constitutions were violated when an expert witness was not allowed to testify[?]

Although the claim was not included in the *habeas* petition itself, we address it because the parties briefed the issue before state courts and the federal district court, it was addressed in the Michigan Court of Appeals opinion and the federal district court *habeas* opinion, and it was briefed by both parties on appeal.

At the time of the deliverance ceremony, KB (according to her handwritten document) was 43 years old. The accuracy of the reported abuse by her father, decades in the past, was questioned by defense counsel in the record he made for appeal. This suggests that defense counsel wanted to admit the evidence of KB's allegations, as well as shed uncertainty upon their accuracy. We question how evidence of sexual abuse by KB's father (whether the jury learned that such abuse was disputed by the father or not) could be used to show a propensity on the part of KB to consider much later, physical contact by a pastor to be sexual in nature. Piscopo does not develop any theory as to why the fact that KB's father was a pastor might cause her to single out other pastors for false accusations of offensive sexual conduct.

Under the Sixth Amendment, a criminal defendant is guaranteed the right to confront "witnesses against him." U.S. CONST. amend. VI. In *Davis v. Alaska*, 415 U.S. 308 (1974), the Supreme Court found that the state trial court had violated the defendant's Sixth Amendment rights by failing to allow his impeachment of a prosecution witness—a juvenile—with that witness's prior criminal record. *Id*. at 310-11. In the case of *Delaware v. Van Arsdall*, 475 U.S. 673 (1986), which examined the *Davis* case, the Supreme Court emphasized that the trial court has "wide latitude" to impose "reasonable limits" to avoid "harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Id*. at 679. In *Van Arsdall*, the defendant sought to impeach a witness whose drunkenness charge was dropped after he agreed to talk to the prosecutor about the defendant's case. That court found a Sixth Amendment violation where

the trial court had "prohibited *all* inquiry into the possibility that [the witness] would be biased as a result of the State's dismissal of his pending public drunkenness charge." *Id*.

In our decision in *Boggs v. Collins*, 226 F.3d 728 (6th Cir. 2000), the *habeas* action of a defendant convicted of rape, we considered the trial court's exclusion of evidence of a prior, allegedly false accusation of rape. Determining that the desired cross-examination was an intended attack on the witness's general credibility, and finding no plausible defense theory of motive or bias, we found no constitutional violation in its exclusion. *Id*. at 740. We considered the *Davis* and *Van Arsdall* cases in concluding "that cross-examination as to bias, motive or prejudice is constitutionally protected, but cross-examination as to general credibility is not." *Boggs*, 226 F.3d at 737. As the parties recognize, this "rule" noted in *Boggs* was vigorously questioned by our decision in *Vasquez v. Jones*, 496 F.3d 564, 574 (6th Cir. 2007). In *Vasquez*, we held that the trial court's refusal to allow a defendant to impeach hearsay testimony with a witness's prior criminal record violated the Confrontation Clause. We held the proposition to be equally true whether the cross-examination went to credibility or bias. We found the *Boggs* case nondispositive on several fronts, including the trial court's reliance on the rape shield statute, and distinguishable facts.[6]

---

[6]The parties dispute whether the evidence in the questionnaire—alleging sexual abuse by the father and rape by demons—was properly excluded under Michigan's rape shield statute. As the state argued, state-law evidentiary claims are not cognizable on *habeas* review. *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). Piscopo cites *Lewis v. Wilkinson*, 307 F.3d 413 (6th Cir. 2002), as an example of a situation where Sixth Amendment protections "trumped" a state's rape-shield statute. He also suggests, alternatively, that he could avoid application of the rape shield law by being allowed to admit evidence of unspecified abuse by the father, which would allow him to develop his theory of bias against male pastors. Because we find no Sixth Amendment violations here, we decline to further address these arguments.

Regardless of whether Piscopo sought to admit this evidence as an attack on KB's credibility, generally, or more specifically to show a bias or motive on the part of KB, the state appellate court did not unreasonably apply Supreme Court precedent in upholding its exclusion. The instant case does not involve a "prototypical form of bias," as did the *Van Arsdall* and *Davis* cases. The assertion that the questionnaire answers reveal a bias against pastors is speculative. Nonetheless, defense counsel was allowed to pursue this argument. On more than one occasion defense counsel did tell the jury that KB had been abused by men, in particular her father, and also told the jury that KB had filled out "paperwork" indicating that she had issues with men and her father. At closing, defense counsel argued that

> [y]ou cannot put a burden on us to find out why KR and KB testified the way they did. Did they have pre-set ideas in their head of what was happening? Did they have some fears? I don't know who's been involved in a car accident, but if you're behind that wheel, and you're-you're like this. You're jumpy. That's normal, human reaction. We don't know if these, what their backgrounds were, whether they were jumpy around men, whether they had trouble with Pastor, whether they had trouble with men. We weren't allowed to find out. But if they were, and someone came up after they're in an altered state of consciousness, as Jim Bacon testifies, and scares them, they're going to imagine all kinds of things happened.

As noted by the district court, the questioning of KB on this evidence by defense counsel suggests that, at that juncture, the defense intended to use the evidence to show a prior false accusation of sexual abuse. Such evidence would be used to attack KB's credibility, not to show a bias. In any event, as both the Michigan Court of Appeals and the district court noted, the allegations against KB's father are "removed in time and markedly different" from those made against Piscopo.

Given the multiple possible reasons counsel sought to have the evidence admitted, the trial court's ruling was not inconsistent with *Davis* or *Van Arsdall*. The Michigan court's conclusion that Piscopo's rights under the Confrontation Clause were not violated by the exclusion of this evidence was not unreasonable.

## C.    Demon Statements

Piscopo also asserts his constitutional right to confront witnesses and present a defense was violated by the trial court when it did not admit KB's statements concerning her asserted rape and threats by demons.[7] Piscopo contends that such evidence would have shown the jury that KB misperceived what happened to her during the deliverance ceremony, and that her "delusions" rendered her testimony unreliable.

As noted above, the defendant was permitted to make a record of testimony concerning this evidence outside of the presence of the jury. KB confirmed that she wrote on her deliverance questionnaire that she was raped by a demon as a teenager. She explained that she was lying in bed and sensed the presence of a "spirit" without a human form. She also acknowledged writing that evil spirits had tried to kill her and her sister, and she had told people of her fear of the basement stairs because she was afraid that demons would grab her by the ankles.

---

[7]Although Piscopo's briefs include arguments concerning his constitutional right to present a defense, and the state responds to these arguments, this claim was neither in his *habeas* petition nor included in the certificate of appealability. In any event, these arguments largely reiterate his Confrontation Clause arguments. To the extent Piscopo's claim is properly before us, we conclude that the state courts' exclusion of the questionnaire evidence was not unreasonable under Supreme Court precedent, as Piscopo was given a "meaningful opportunity to present a complete defense." *Crane v. Kentucky*, 476 U.S. 683, 690 (1986).

Piscopo's argument concerning KB's experience with demons was mentioned only in passing by the opinion of the Michigan Court of Appeals. On *habeas* review, the district court then determined that because the state court of appeals decision "provided only a cursory analysis of demon-rape issue," the appropriate standard of review to apply was that of "modified AEDPA deference." "This standard of review requires the court to conduct a careful review of the record and applicable law, but nonetheless bars the court from reversing unless the state court's decision is contrary to or an unreasonable application of federal law." *Maldonado v. Wilson*, 416 F.3d 470, 476 (6th Cir. 2005).

As the state asserts, however, all of the deference afforded by § 2254 applies to our review. This is true whether or not "a state court's order is unaccompanied by an opinion explaining the reasons relief has been denied." *Harrington v. Richter*, 562 U.S. __, 131 S. Ct. 770, 784 (2011). *See also Treesh v. Bagley*, 612 F.3d 424, 429 (6th Cir. 2010), *cert. denied*, 131 S. Ct. 1678 (2011). The Supreme Court's recent *Harrington* opinion described the AEDPA's role as a "part of the basic structure of federal habeas jurisdiction, designed to confirm that state courts are the principal forum for asserting constitutional challenges to state convictions." *Harrington*, 131 S. Ct. at 787. A state court order lacking in reasoning or explanation does not have to include citation to, or demonstrate its awareness of, Supreme Court decisions as long as any reasoning that is given, and the result, are not in conflict with Supreme Court precedent. *Treesh*, 612 F.3d at 430 (citing *Williams v. Bagley*, 380 F.3d 932, 942 (6th Cir. 2004)).

As with the sexual abuse evidence, the parties also dispute the characterization of this evidence. Piscopo asserts that the evidence would have been used to show that KB misperceived the incident, rather than to attack her credibility. This is asserted by Piscopo to distinguish the case from the facts of *Boggs*, where we found that "cross-examination as to general credibility is not [constitutionally protected]." 226 F.3d at 737. However, as discussed above, in *Vasquez*, we held that attacks on general credibility were protected under the Confrontation Clause.[8]

There is no need to address the tension between the *Boggs* and *Vasquez* decisions in deciding this case. Even if Piscopo's intended use of the evidence was as described, it was not unreasonable for the Michigan courts to conclude that it was a constitutionally permitted limit on cross examination. The jury was presented with the circumstances of the contact between KB and Piscopo. Members of the jury were aware that KB was someone who claimed to be plagued by evil spirits and was in fact at the deliverance ceremony to exorcise them. The jury also heard testimony concerning her attendance at other pastors' deliverance ceremonies in the past. KB filled out a lengthy form, including a couple of pages briefly describing upsetting experiences in her life, in preparation for deliverance by Piscopo from evil spirits. Piscopo does not argue that these past incidents somehow incapacitated KB, or caused her to be *generally* unable to distinguish real life events from imagined ones. He

---

[8]Also as with the sexual abuse evidence, the parties dispute whether the trial court properly excluded the evidence under Michigan's rape shield statute. However, in our *habeas* review we do not "determine whether the exclusion of the evidence by the trial judge was correct or incorrect under state law, but rather whether such exclusion rendered petitioner's trial so fundamentally unfair as to constitute a denial of federal constitutional rights." *Lewis v. Wilkinson*, 307 F.3d 413, 420 (6th Cir. 2002) (quoting *Logan v. Marshall*, 680 F.2d 1121, 1123 (6th Cir. 1982)).

offers no argument as to how one questionnaire answer concerning KB's perceived teenage demon rape demonstrates that she incorrectly sexualizes situations as an adult.[9]

The Supreme Court has described the Confrontation Clause's guarantee as that of "an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985). Whether or not we would have come to the same conclusion as the trial court on these evidentiary questions is not dispositive of this action. *See Bell v. Cone*, 535 U.S. 685, 699 (2002).

As the Supreme Court stated in *Harrington*, *habeas corpus* is not a "substitute for ordinary error correction through appeal." *Harrington*, 131 S. Ct. at 786. *Habeas* review employs a deference which "demands that state-court decisions be given the benefit of the doubt." *Montgomery v. Bobby*, 654 F.3d 668, 676 (6th Cir. 2011) (quoting *Cullen v. Pinholster*, __ U.S. __, 131 S. Ct. 1388, 1398, 179 L.Ed 2d 557 (2011)). Application of that deference to the state court rulings at issue here demonstrates that Piscopo is not entitled to the relief that he seeks.

Because the decision in the Michigan state courts—that excluding this evidence represented a constitutionally permitted limit on Piscopo's cross-examination of KB—was

---

[9]We find distinguishable the case of *Hargrave v. McKee*, 248 F. App'x. 718 (6th Cir. 2007), cited by Piscopo. In *Hargrave*, a woman living out of her car complained of a rape and carjacking by the defendant. The defendant was convicted on the carjacking charges, despite his defense that the complainant had consented to his temporary possession of the car, and was not permitted to cross-examine the complainant in any depth on her psychiatric condition. In that case, we held that the Confrontation Clause guaranteed a defendant the right to additional cross-examination. We came to this determination finding a "strong possibility" that the complaining witness's mental condition impacted the reliability of testimony concerning her consent to the "very events at issue." *Hargrave*, 248 F. App'x at 727.

not an unreasonable application of Supreme Court precedent, we **AFFIRM** the district court's denial of the petition.