**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 15a0381n.06

**Case No. 13-1373**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| | ) | **FILED** |
| | ) | May 27, 2015 |
| **MOSES WILLIAMS ,** | ) | DEBORAH S. HUNT, Clerk |
| | ) | |
| Petitioner-Appellant, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF MICHIGAN |
| CINDI CURTIN, | ) | |
| | ) | |
| Respondent-Appellee. | ) | **O P I N I O N** |
| | ) | |

**BEFORE:  DAUGHTREY, McKEAGUE, and STRANCH, Circuit Judges.**

**McKEAGUE, Circuit Judge.**   Petitioner Moses Williams, a Michigan state prisoner convicted of second degree murder, appeals from the denial of his petition for writ of habeas corpus.  One issue has been certified for appeal:  whether the state trial court impermissibly infringed Williams' Sixth Amendment right to present a defense when it disallowed testimony of a putative alibi witness because Williams failed to give timely notice of his alibi defense.  The district court denied relief holding that the state courts did not unreasonably apply clearly established federal law.  Finding no error, we affirm.

**I**

In December 2004, Moses Williams and Tommy Tiggs were jointly tried before two separate juries in connection with the April 2004 shooting death of Edward Beasley in Flint,

Michigan. The prosecution proofs showed that both men participated in the shooting. There was little physical evidence implicating Williams. The prosecution's case depended on the eyewitness testimony of Beasley's friend, Carole Cooper. Cooper was with Beasley and the two assailants in Beasley's Cadillac during negotiations for the sale of the car immediately before the shooting and was still in the car with Beasley at the time of the shooting. Cooper later identified Williams as one of the shooters from a photo array. Williams did not testify or present any defense proofs. After a four-day trial, Tiggs was found guilty of first degree murder and Williams was found guilty of second degree murder. Tiggs was sentenced to life imprisonment; Williams was sentenced to a prison term of 25 to 50 years. Both convictions were affirmed on direct appeal.

In his direct appeal, Williams argued that the trial court abused its discretion and effectively denied him his right to present a defense when it refused to allow alibi witness Kessa Peters to testify. Peters purportedly would have testified that Williams was with her, approximately 250 miles away in Columbus, Ohio, at the time of the shooting. Williams acknowledges that he failed to comply with the state law requirement that he give the prosecution written notice of intent to present an alibi defense not less than ten days prior to trial. Mich. Comp. Laws § 768.20(1). Although Williams' counsel was aware of a possible alibi defense five months prior to trial, he did not give the court and prosecutor notice until Friday, December 3, 2004, at a pretrial conference four days prior to trial. At that time, counsel advised that he had managed to contact Peters by phone that morning and that she lived in Columbus and did not have a telephone. Despite the late notice, the prosecutor agreed to waive objection, provided Peters contacted the investigating officer, Sergeant Besson, before Monday afternoon

when Besson finished her duty, i.e., 3:00 p.m. on December 6th. R. 8-7, Pretrial Hrg. Tr. at 4–5, Page ID 539–40.

Unfortunately, Peters did not meet this condition. Instead, she left a voicemail message Monday at 3:51 p.m., indicating simply that she would testify that Williams was with her during a certain time frame. She did not leave a telephone number or address. Hence, neither Sergeant Besson nor the prosecution was able to contact Peters and question her or otherwise investigate her story. At the start of trial Tuesday morning, the prosecution objected to the proposed late addition of Peters as an alibi witness. Defense counsel requested more time to produce Peters, noting "the alibi witness would probably not be called until at least Thursday afternoon." R. 8-8, Trial Tr. at 6, Page ID 553. The trial court noted that the time had come to pick a jury and, unwilling to continue "playing the game," advised Williams' counsel that the request to allow Peters to testify as an alibi witness would be denied unless there was anything else to support a possible exception to the ten-day notice rule. *Id*. at 5–6, Page ID 552–53. Williams' counsel did not request a continuance but asked that the prosecutor be precluded from commenting on the defense's inability to produce witnesses corroborating any alibi defense. The court so instructed the prosecutor and proceeded with jury selection. Williams' defense consisted solely of counsel's cross-examination of prosecution witnesses and counsel's argument that the evidence did not prove guilt beyond a reasonable doubt.

Following his conviction, the Michigan Court of Appeals rejected Williams' claim that the trial court abused its discretion in excluding Peters and denied him his right to present a defense. *People v. Williams*, 2006 WL 2000101 (Mich. Ct. App. July 18, 2006). In evaluating the trial court's enforcement of the statutory alibi notice requirement, the court of appeals

considered the factors prescribed by the Michigan Supreme Court in *People v. Travis*, 443 Mich.

668, 682; 505 N.W.2d 563 (1993):

> (1) the amount of prejudice that resulted from the failure to disclose, (2) the reason for nondisclosure, (3) the extent to which the harm caused by nondisclosure was mitigated by subsequent events, (4) the weight of the properly admitted evidence supporting the defendant's guilt, and (5) other relevant factors arising out of the circumstances of the case.

*Williams*, 2006 WL 2000101 at *2. None of these factors was deemed to weigh in favor of

finding an abuse of discretion.

After the Michigan Supreme Court denied leave to appeal, Williams sought post-

conviction relief. The trial court denied the motion and the Michigan Court of Appeals and

Michigan Supreme Court both denied leave to appeal. Williams petitioned for a writ of habeas

corpus, contending again, among other claims, that his right to present a defense had been

abridged when the trial court refused to allow Peters to testify. The district court denied relief,

holding that the Michigan Court of Appeals' denial of the claim on direct review was not an

unreasonable application of clearly established federal law. R. 18, Opinion and Order at 10–11,

Page ID 1765–66, *Williams v. Woods*, 2013 WL 625750 at *6–7 (E.D. Mich. Feb. 20, 2013).

The district court concluded that the state court had identified and balanced the relevant factors

and had not acted arbitrarily. The court held this sufficient to satisfy the highly deferential

"benefit of the doubt" review that governed evaluation of Williams' habeas petition, citing

*Renico v. Lett*, 559 U.S. 766, 773 (2010). *Id.* at 11, Page ID 1766, *Williams*, 2013 WL 625750 at

*7.

However, the district court granted a certificate of appealability and counsel was

appointed to represent Williams in this appeal. Williams maintains he is entitled to habeas relief

because the Michigan Court of Appeals' decision, based on state law, and devoid of citation to

United States Supreme Court decisions establishing the governing federal law, is "contrary to" the clearly established federal law.

## II

We review the district court's denial of habeas relief de novo. *O'Neal v. Bagley*, 743 F.3d 1010, 1014 (6th Cir. 2013). As the district court observed, under the provisions of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), habeas review of the state court's adjudication on the merits is extremely deferential. For claims adjudicated on the merits, habeas relief may be granted only if the state court decision is "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court" or is "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1) and (2).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). This standard is difficult to meet by design. *Id.* A federal court may "not lightly conclude that a State's criminal justice system has experienced the 'extreme malfunctio[n]' for which federal habeas relief is the remedy." *Burt v. Titlow*, 134 S. Ct. 10, 16 (2013) (quoting *Harrington*, 131 S. Ct. at 786).[1]

---

[1]Williams cites Sixth Circuit precedent for the notion that "modified AEDPA deference" applies where, as here, the state court decision under review contained little analysis of the substantive constitutional issue. *Vasquez v. Jones*, 496 F.3d 564, 569 (6th Cir. 2007). In *Harrington*, however, the Court made it clear that AEDPA's highly deferential review applies to the *result* of the state court decision, irrespective of whether the state court decision includes citation to Supreme Court cases or any reasoning at all. *Harrington*, 131 S. Ct. at 784. Consequently, since *Harrington*, the notion of "modified AEDPA deference" lacks continuing vitality. *See Jackson v. Smith*, 745 F.3d 206, 209–10 (6th Cir. 2014); *Piscopo v. Michigan*, 479 F. App'x 698, 703–04 (6th Cir. 2012); *Smith v. Coleman*, 453 F. App'x 625, 627 (6th Cir.

Williams contends under § 2254(d)(1) that the Michigan Court of Appeals' decision is "contrary to" the clearly established federal law. The "contrary to" standard is met only if the state court applied "a rule that contradicts the governing law set forth in [Supreme Court] cases." *Williams v. Taylor*, 529 U.S. 362, 405 (2000). The standard is met if the state court decision is diametrically different from, or opposed in character or nature to, clearly established precedent. *Id.* at 405–06. Or, the "contrary to" standard is met if the state court confronted a set of facts materially indistinguishable from facts presented in a Supreme Court case and yet reached a result different from that reached by the Supreme Court. *Id*. at 406.

Our review requires us to first identify the clearly established federal law. *Marshall v. Rodgers*, 133 S. Ct. 1446, 1449 (2013). Federal law is clearly established under § 2254(d)(1) by the holdings, as opposed to the dicta, in Supreme Court decisions. *White v. Woodall*, 134 S. Ct. 1697, 1702 (2010). Because circuit precedent is not "clearly established Federal law, as determined by the Supreme Court," it "cannot form the basis for habeas relief under AEDPA." *Parker v. Matthews*, 132 S. Ct. 2148, 2155 (2012); *see also Glebe v. Frost*, 135 S. Ct. 429, 431 (2014) (per curiam); *White*, 134 S. Ct. at 1702 n.2.

## III

The parties agree on the source and substance of the clearly established law that governs here. In *Taylor v. Illinois*, 484 U.S. 400 (1988), the Court recognized that an accused has a fundamental right to present witnesses in his own defense under the Sixth Amendment. But the right is not unfettered. "The right may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process." *Rock v. Arkansas*, 483 U.S. 44, 55 (1987) (quoting *Chambers v. Mississippi*, 410 U.S. 284, 295 (1973)) (internal quotation marks omitted).

2011). *See also Treesh v. Bagley*, 612 F.3d 424, 429 (6th Cir. 2010) (consistent with *Harrington*).

The right is subject to "rules of procedure that govern the orderly presentation of facts and arguments to provide each party with a fair opportunity to assemble and submit evidence to contradict or explain the opponent's case." *Taylor*, 484 U.S. at 411. "The trial process would be a shambles if either party had an absolute right to control the time and content of his witnesses' testimony." *Id.* The *Taylor* Court expressly recognized the salutary purposes served by notice-of-alibi rules. Considering the ease with which an alibi defense can be fabricated, the Court recognized that such discovery rules serve the prosecution's interest in protecting itself against an eleventh-hour defense as well as the public interest in a full and truthful disclosure of critical facts. *Id.* at 411–12.

The *Taylor* Court declined to prescribe a comprehensive standard to guide the exercise of discretion in every conceivable case. Instead, the Court discussed countervailing interests that would often come into play and need to be considered:

> [A] trial court may not ignore the fundamental character of the defendant's right to offer the testimony of witnesses in his favor. But the mere invocation of that right cannot automatically and invariably outweigh countervailing public interests. The integrity of the adversary process, which depends both on the presentation of reliable evidence and the rejection of unreliable evidence, the interest in the fair and efficient administration of justice, and the potential prejudice to the truth-determining function of the trial process must also weigh in the balance.

> A trial judge may certainly insist on an explanation for a party's failure to comply with a request to identify his or her witnesses in advance of trial. If that explanation reveals that the omission was willful and motivated by a desire to obtain a tactical advantage that would minimize the effectiveness of cross-examination and the ability to adduce rebuttal evidence, it would be entirely consistent with the purposes of the Compulsory Process Clause simply to exclude the witness' testimony.

> The simplicity of compliance with the discovery rule is also relevant. As we have noted, the Compulsory Process Clause cannot be invoked without the prior planning and affirmative conduct of the defendant. Lawyers are accustomed to meeting deadlines. Routine preparation involves location and interrogation of potential witnesses and the serving of subpoenas on those whose testimony will

be offered at trial. The burden of identifying them in advance of trial adds little to these routine demands of trial preparation.

*Id.* at 414–16 (footnotes and citations omitted). In light of these considerations, the *Taylor* Court upheld the exclusion of testimony of late-noticed witnesses. Even as it acknowledged that alternative sanctions were available and that prejudice to the prosecution could have been avoided, the Court held that exclusion was justified because of willful misconduct, as the record supported the inference that "witnesses are being found that really weren't there" and that notice was given late to obtain tactical advantage. *Id.* at 416–17.

## IV

Williams acknowledges that the Michigan Court of Appeals decision is not contrary to clearly established federal law simply because it does not cite *Taylor*. He maintains, however, that both the reasoning and result of the decision contradict the holding of *Taylor*. Yet, several of the factors considered are common to both decisions. And the holdings of both decisions are facially consistent: upholding the trial court's exercise of discretion to exclude testimony in enforcement of a discovery rule. In both cases, the defendant's right to present his defense bowed to the prosecution's interest in protecting itself from an eleventh-hour defense, the court's interest in protecting the integrity of the adversary process, and the public's interest in the truthful disclosure of critical facts.

Still, despite these consistencies, Williams identifies two shortcomings in the Michigan Court of Appeals decision that he says render it so contrary to the teaching of *Taylor* as to compel agreement among all fairminded jurists that the Michigan Court of Appeals erred and that he is entitled to habeas relief. In particular, Williams contends that the state court's opinion falls short because it includes no consideration of his fundamental right to present a defense.

The state court's analysis is thus said to contravene *Taylor*'s instruction that the fundamental character of his right not be ignored.

To be sure, the Michigan Court of Appeals opinion contains little explicit recognition of the importance of Williams' right to present a defense. But neither is the right completely ignored. The state court's *implicit* recognition is evidenced first by its acknowledgement that the trial court did not automatically deny Williams' initial request, even though the request was made six days after the statutory deadline and a mere two working days before the start of trial, and even though Williams' counsel, even then, was still unable to provide Kessa Peters' contact information to the prosecution. *Williams*, 2006 WL 2000101 at *2. The court of appeals recognized that the trial court, instead of summarily denying the request as untimely, went along with the prosecution's proposed accommodation in an effort to preserve Williams' right to present an alibi defense. But Williams also failed to meet the prosecution's condition the day before trial was to begin. The court of appeals thus recognized that the trial court did not actually deny Williams' request until the day of trial. At that point, Williams *still* had failed to provide the prosecution with notice that would have permitted verification of Peters' supposed testimony and investigation of the putative alibi. Then, as the trial court announced its intention to deny the eleventh-hour request, it gave Williams' counsel a final opportunity to address the court—either to clarify his objection or propose an alternative remedy. Hearing neither, the trial court proceeded with jury selection. But, as the court of appeals also recognized, the trial court further honored Williams' right to present a defense by acknowledging that he remained free to testify and present other witnesses' testimony in support of the alibi defense—without comment by the prosecutor on Williams' failure to otherwise corroborate the defense. *Id.* No, Williams' right to present a defense was not ignored by the state courts.

Williams also contends the Michigan Court of Appeals' decision is contrary to established law because it failed to address the trial court's failure to consider alternative sanctions before applying the drastic sanction of preclusion. To the contrary, the foregoing discussion demonstrates the court of appeals' recognition that the trial court did not rush to apply preclusion as a sanction simply because the deadline passed, but patiently worked with the parties to protect the relevant interests.

Moreover, the *Taylor* Court did not hold that the availability of alternative sanctions would preclude use of the preclusion sanction. Far from it. *Taylor* actually upheld preclusion even as it recognized that "a less drastic sanction is always available." *Taylor*, 484 U.S. at 413. The Court noted that "[p]rejudice to the prosecution could be minimized by granting a continuance or a mistrial to provide time for further investigation" and that "further violations can be deterred by disciplinary sanctions against the defendant or defense counsel." *Id.* But despite the availability of alternative sanctions, the *Taylor* Court upheld the exclusion of testimony in enforcement of the discovery rule. The Court reasoned that use of alternative sanctions, though facially suitable in a particular case, "would be less effective than the preclusion sanction" and, in some cases, "would perpetuate rather than limit the prejudice to the State and the harm to the adversary process." *Id.* After all, the Court noted, "[o]ne of the purposes of the discovery rule itself is to minimize the risk that fabricated testimony will be believed." *Id.* In an observation no less apt in the instant case, the *Taylor* Court noted that it is "reasonable to presume that there is something suspect about a defense witness who is not identified until after the 11th hour has passed." *Id.* at 414.

There has been no finding in this case that Williams' late notice was willful or deliberately designed to gain unfair tactical advantage. It is undisputed, however, that his

counsel was aware of the possibility of an alibi defense a full five months before trial. Yet, he offered no explanation for the late notice except that, after trying unsuccessfully for a couple of weeks, he did not manage to contact Kessa Peters until four days prior to trial. This does not necessarily evidence willfulness but, at a minimum, it bespeaks a lack of due diligence. If Carole Cooper's identification of Williams as the second shooter really were erroneous, and if Williams really were 250 miles away in Columbus at the time of the murder, due diligence would have demanded a much more timely and thorough development of the defense. If counsel had undertaken such efforts and been stymied by Peters' elusiveness, then it should nonetheless have been a simple matter for him to give timely notice of Williams' intent to rely on the alibi defense, alert the court and prosecution to his inability to contact Peters, and show cause for a continuance of trial. The fact that defense counsel did not proceed in this manner is not damning, but it is telling. As the Supreme Court noted in *Taylor*, "The simplicity of compliance with the discovery rule is also relevant" in evaluating the appropriateness of preclusion.[2] *Id.* at 415.

It follows that the state courts' failure to more explicitly consider alternative sanctions does not render their decision contrary to clearly established federal law. Instead, the manifest reasons to question the truthfulness of the supposed alibi defense render the result reached by the Michigan Court of Appeals entirely consonant with established federal law, as reflected in both the analysis and result in *Taylor*.

---

[2]No less telling is the fact that the record is still devoid of evidence of what Peters' testimony would have been—even after direct review, collateral review, and these habeas proceedings—*if* she had appeared to testify. To date, we have nothing more than trial counsel's representation as to what Peters told him over the phone. But counsel did not offer to make a proffer establishing the contents of the anticipated testimony. Peters was not subpoenaed, never appeared to testify, was never interviewed by the prosecution or defense counsel, and has not even signed an affidavit.

To the extent Williams' "contrary to" argument rests on *Michigan v. Lucas*, 500 U.S. 145 (1991), it is plainly wrong. In *Lucas*, the Court overturned a decision holding that preclusion of evidence for violation of a discovery rule is a *per se* violation of a defendant's Sixth Amendment right to present a defense. The *Lucas* Court simply vacated the ruling and remanded for further proceedings in light of the teaching of *Taylor v. Illinois*. *Lucas*, 500 U.S. at 152–53. Citing dicta in *Lucas*, Williams would have us construe *Taylor* as holding that the interests in favor of enforcement of a discovery rule must be found to outweigh, or justify limitation of, the defendant's right to present a defense before the rule can be enforced to exclude evidence. But dicta appearing in a Supreme Court opinion will not make out "clearly established Federal law, as determined by the Supreme Court." Only the opinion's holding does that. *White*, 134 S. Ct. at 1702.

Moreover, the Supreme Court, in *Nevada v. Jackson*, 133 S. Ct. 1990, 1993 (2013) (per curiam), recently rejected the very construction of *Lucas* that Williams urges us to adopt. The *Jackson* Court stated that *Lucas* "did not even suggest, much less hold, that it is unconstitutional to enforce such a [notice] rule unless a case-by-case balancing of interests weighs in favor of enforcement." *Id*. at 1993. Instead, as *Jackson* notes, *Lucas* expressed no opinion as to whether preclusion was justified in that case and remanded the matter to the state court for assessment in light of the considerations outlined in *Taylor*. *Id.*[3]

Thus, *Taylor*'s holding, properly understood, teaches that various factors are potentially relevant in evaluating the appropriateness of the preclusion sanction; it does not prescribe a

---

[3]Williams' reliance on our decision in *Ferensic v. Birkett*, 501 F.3d 469 (6th Cir. 2007), is similarly misplaced. *Ferensic*, of course, is not a holding of the Supreme Court and is therefore not "clearly established Federal law" under AEDPA. *Parker*, 132 S. Ct. at 2155. Further, *Ferensic* relies in part on the same construction of *Lucas* that the Supreme Court expressly disavowed in *Jackson*.

comprehensive standard, and it does not mandate interest-balancing. It follows, that because *Taylor*'s "rule" is a general one, state courts whose rulings are reviewed under AEDPA as being contrary to or unreasonable applications of such rule, are entitled to "more leeway . . . in reaching outcomes in case-by-case determinations." *Harrington*, 131 S. Ct. at 786 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

In this case, as both parties concede, the governing clearly established federal law is made out by the holding of *Taylor v. Illinois*. The Michigan Court of Appeals' decision, albeit devoid of citation to *Taylor*, is not diametrically different from or opposite in character to the Supreme Court's ruling in *Taylor*. The Michigan Court of Appeals' decision rested on consideration of several factors identified in *Taylor* as relevant considerations and the result reached, upholding preclusion of testimony based on those considerations, is consistent with *Taylor*. Our review, under the deferential standard prescribed by AEDPA, does not reveal such an arbitrary enforcement of the preclusion sanction that all fairminded jurists would necessarily find it to be contrary to *Taylor* and therefore violative of Williams' Sixth Amendment right to present a defense.

## V

Finding no "extreme malfunction" of the state's criminal justice system, we have no warrant to grant habeas relief. Accordingly, we **AFFIRM** the district court's judgment denying Williams' petition for writ of habeas corpus.

STRANCH, J., concurring. I write separately only to address footnote one of the majority opinion. I acknowledge that our court has held, since the Supreme Court decided *Harrington v. Richter*, 131 S. Ct. 770 (2011), that modified AEDPA deference should no longer be applied. *Jackson v. Smith*, 745 F.3d 206, 209–10 (6th Cir. 2014); *Piscopo v. Mich.*, 479 F. App'x 698, 703–04 (6th Cir. 2012); *Smith v. Coleman*, 453 F. App'x 625, 627 (6th Cir. 2011). Since *Harrington*, our court has also applied modified AEDPA deference in two published cases. *Peoples v. Lafler*, 734 F.3d 503, 516–17 (6th Cir. 2013); *Moore v. Mitchell*, 708 F.3d 760, 795 (6th Cir. 2013). Our conflicting case law leaves me unable to agree with the conclusion in footnote one.